Tony Nasser, Esq., CA SBN: 307930
BARNES LAW
601 South Figueroa Street, Suite 4050
Los Angeles, California 90017
Telephone:   (310) 510-6211
Facsimile:   (310) 510-6225
E-mail:   tonynasser@barneslawllp.com

Attorney for Plaintiffs Nevada Green Party, Dr. Jill Stein, and Julia Hammett
Attorney has complied with LR IA 10-2

MACE J. YAMPOLSKY, LTD.
MACE J. YAMPOLSKY, ESQ.
Nevada Bar 001945
625 South Sixth Street
Las Vegas, Nevada 89101
(702) 385-9777; Fax. No. (702) 385-3001

Local Counsel for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| NEVADA GREEN PARTY; DR. JILL STEIN; AND JULIA HAMMETT,<br><br>Plaintiffs,<br><br>v.<br><br>BARBARA C. CEGAVSKE, in her official capacity as Secretary of State of Nevada<br><br>Defendant. | ) Case No.: _____<br>)<br>)<br>)<br>) **PLAINTIFFS' APPLICATION FOR**<br>) **TEMPORARY RESTRAINING ORDER**<br>) **AND ORDER TO SHOW CAUSE RE:**<br>) **PRELIMINARY INJUNCTION**<br>)<br>)<br>) |

Plaintiffs Nevada Green Party, Dr. Jill Stein, and Julia Hammett (hereinafter collectively "Plaintiffs"), pursuant to Rule 65 of the Federal Rules of Civil Procedure ("FRCP"), hereby apply for this Court to issue a temporary restraining order and an

order to show cause why a preliminary injunction should not issue (the "Application"), as follows:[1]

## I.  INTRODUCTION

The Nevada Green Party, a political party of national prominence, seeks to place its candidates for President and Vice President of the United States on the ballot for the upcoming 2016 Nevada general election. Due to the unconstitutionally early deadline for minor political parties to submit their petitions to place their presidential candidates on the general election ballot, the Green Party was unable to obtain the required number of valid signatures in time. The Nevada Secretary of State should nevertheless accept more signatures from the Green Party despite the passing of the petition deadline, as there would be no discernable negative effect on the state or its citizens by doing so. Because Nevada and federal precedent favor inclusion on the ballot, and because Plaintiffs' free speech, voting and associational rights will be irreparably harmed by the Secretary's ballot exclusionary act, Plaintiffs request that the Court order the Secretary to accept more signatures past the petition deadline to allow the Nevada Green Party to place its candidates on the ballot.

## II. STATEMENT OF FACTS

The Nevada Green Party is currently a recognized political party in Nevada pursuant to Nev. Rev. Stat. ("NRS") 293.128. It gathered signatures in support of its petition to place its candidates for President and Vice President of the United States on

---

[1] This application is based on the following documents: this Application; the Declarations of Kim Borghese, Richard Winger, and Tony Nasser; the attached exhibits; the complaint in this matter; the complete files and records of this action; and such other and further matters as the Court may properly consider.

the general election ballot. Declaration of Kim Borghese ("Borghese Decl.") ¶ 3. However, the State rejected the petition because it lacked the requisite number of valid signatures. Borghese Decl. ¶ 4. The Nevada Green Party circulated additional petitions and collected additional signatures, which it attempted to tender to the State on August 1, 2016, but the State refused to accept the supplement because the June 3, 2016 deadline had passed. Borghese Decl. ¶¶ 5, 6.

The Nevada statute purporting to set forth a procedure by which political parties can designate their candidates for presidential and vice presidential elections, NRS 293.1715, states that "[n]ot later than the third Friday in June preceding the general election" minor political parties must file a petition with the Secretary of State which is signed by a number of registered voters equal to at least 1 percent of the total number of votes cast at the last preceding general election for the offices of Representative in Congress, which was 5,431 required signatures. NRS 293.1715. However, the true effective deadline for minor political party petitions is set forth in NRS 293.172, which requires that these petitions be filed with the county clerks first for verification of the signatures "not later than 10 working days before the last day to file the petition." NRS 293.172. This "last day to file the petition" is the deadline set forth in NRS 293.1715 mentioned above. This year, 10 working days before the third Friday in June preceding the general election fell on June 3, 2016, which is **159 days** before the November 8, 2016 general election. The Green Party did not even choose its presidential and vice presidential candidates until its national convention on August 6, 2016. Borghese Decl. ¶ 8.

Due to this arbitrarily early petition deadline, the Nevada Green Party was not

able to obtain enough volunteers to go out and collect signatures early enough, and thus was unable to obtain the requisite number of signatures by this early petition deadline. Borghese Decl. ¶ 10. Notwithstanding the fact that volunteers are generally hard to find, finding volunteers interested enough to devote their personal time to collect signatures over five months prior to the general election is an extremely difficult task. Indeed, due to this difficulty, the Green Party could not begin collecting signatures for its petition until May 21, 2016; less than two weeks prior to the June 3, 2016 deadline. Borghese Decl. ¶ 5.

Due to the difficulties and restrictions caused by this arbitrary deadline, the Green Party was not able to submit enough verified signatures to the county clerks by the date imposed by the NRS 293.172, and thus will not be able to place the names of Dr. Jill Stein, the Nevada Green Party nominee for President of the United States and her vice presidential candidate on the ballot for the November 8, 2016 general election. Neither the Secretary of State (nor any other governmental entity) has stated or shown that it suffered any actual or theoretical prejudice as a result of the Green Party's supposed "late" filing of the papers. Borghese Decl. ¶ 8. Instead, the Secretary of State's office simply stated that there could be no late filings. Borghese Decl. ¶ 7. Neither NRS 293.1715 or 293.172 states any particular penalty or remedy for failure to comply with its timing provisions.

### III.   GROUNDS FOR TEMPORARY RESTRAINING ORDER[2]

---

[2] Plaintiffs gave notice to Defendant's counsel of their intent to file an application for temporary restraining order and order to show cause. Declaration of Tony Nasser ¶ 4–5.

Plaintiffs will be irreparably injured, and said injury will be suffered imminently, in the absence of this Court granting the temporary restraining order and order to show cause requested herein because without relief, the Secretary of State will not place the names of the Green Party candidates on the ballot for the general election.

Plaintiffs will be irreparably injured by the above-described actions of the Secretary of State, in that if the Nevada Green Party is not allowed to submit its presidential candidates' nomination papers in time for the candidates' names to be printed on the November 8, 2016 general election ballots, it will effectively be removed from any consideration in the subject elections by the voting public, as none of the Plaintiffs' names will appear on the ballot. Borghese Decl. ¶ 10. In addition, the First Amendment rights of all Nevada voters will be irreparably harmed, in that said voters will not be able to vote for these candidates, and should Dr. Stein prevail in the Nevada general election, the electors will not be able to cast their votes for her as President. *Anderson v. Celebrezze*, 460 U.S. 780, 787 (1983) ("*Anderson*") (recognizing harm to voters' First Amendment rights of association when they are unable to vote for the candidates they support).

The above-described injuries are irreparable and imminent. Unless the Secretary of State is ordered to accept signatures past the petition deadline set forth in NRS 293.1715 and 293.172 to place the candidates on the ballot, the Green Party will spend vital time prior to the general election in court instead of campaigning and will face the uncertainty of not knowing if its candidates will even appear on the ballot. During a competitive political campaign for President of the United States, this time is extremely important. In addition, if an order is not issued immediately, there may not be enough

time to print the Nevada Green Party's candidate names on the ballot before the general election.

In sum, the Nevada Green Party, the Nevada voters (and presumably the Secretary of State as well), need the issues posed by this lawsuit to be adjudicated as soon as possible so that the Nevada Green Party can plan for and participate in the general election campaign, the Nevada voters can vote for their candidates of choice, and the Secretary of State can efficiently administer the printing and issuing of ballots representing all candidates to the voting public. As a result, time is of the essence, and Plaintiffs therefore request that this Court issue the temporary restraining order filed concurrently with this Application.

## IV. GROUNDS FOR PRELIMINARY INJUNCTION

A preliminary injunction should be granted if Plaintiffs show "(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiffs if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiffs, and (4) advancement of the public interest (in certain cases)." *Rodde v. Bonta*, 375 F.3d 988, 994 (9th Cir. 2004). Alternately, the Court should grant injunctive relief wherever Plaintiffs demonstrate "a combination of probable success on the merits and the possibility of irreparable injury" or "that serious questions are raised and the balance of hardships tips sharply in their favor." *Id*.

The regulation of ballot access involves fundamental First Amendment rights. *See Anderson v. Celebrezze*, 460 U.S. 780 (1983) ("*Anderson*"). Restrictions by state officials are particularly suspect "in the context of a Presidential election" where "state imposed restrictions implicate a uniquely important national interest." *Anderson* at 781.

"Generally, in a First Amendment challenge, a plaintiff who meets the first prong of the test for a preliminary injunction will almost certainly meet the second, since irreparable injury normally arises out of the deprivation of speech rights." *ACLU v. Reno*, 217 F.3d at 180 (internal citations and quotations omitted) ("*Reno*"). Even the most state-friendly federal appellate courts recognize that exclusion from the ballot implicates fundamental First and Fourteenth Amendment rights. *Duke v. Smith*, 13 F.3d 388 (11th Cir. 1994) (striking down as unconstitutionally vague a law that empowered a state actor to exclude candidate from the Presidential ballot).

"As the Supreme Court has clearly stated, 'the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Reno* at 180, quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Similarly, in *Council of Alternative Political Parties v. Hooks*, 121 F.3d 876 (3d Cir. 1997), the Third Circuit held that the irreparable injury prong was met because "if the plaintiffs lack an adequate opportunity to gain placement on the ballot . . . this infringement on their rights cannot be alleviated after the election." *Id.* at 883.

Here, all the relevant factors strongly counsel in favor of this Court's granting a preliminary injunction, as explained below. The probability of success is high, as is the possibility of irreparable injury. Similarly, this case raises serious questions and the balance of hardships tips heavily in Plaintiffs' favor.

## A. Plaintiffs Are Likely To Succeed On The Merits Of Their Claims

### 1. Nevada Case Law On Nearly Identical Facts Supports Granting Relief

In a previous, nearly identical situation, a Nevada District Court ordered the Secretary of State to accept additional signatures for a minor political party's petition to place presidential candidates on the general election ballot past the deadline set forth under the Nevada Revised Statute. In 1992, the Populist Party of Nevada submitted their petition to place its candidates for president and vice-president on the general election ballot. They collected signatures and submitted their petition before the deadline, which was June 10, 1992 – even later than the current deadline being challenged. However, the signatures failed to pass Nevada's verification process and their petition was rejected. Nevertheless, the Populist Party collected additional signatures and then sought a preliminary injunction ordering the Secretary of State to accept its petition past the deadline. There, the court agreed that the early filing deadline in June "plagued" the Populist Party with "insufficient time to organize and collect signatures" and that "a later filing deadline would be less burdensome. . ." *Fulani v. Lau*, No. CV-N-92-535 (Nev. filed Oct. 1, 1992)[3] ("*Fulani*"). Those facts are indistinguishable here, except the minor political party's petition filing deadline now is even further in advance of the general election. The Court should follow this extremely similar precedent and order the Secretary of State to accept the Green Party's additional signatures, and that the petition filing deadline be extended.

As the *Fulani* Court stated, "these laws also burden candidates who decide [sic] run in advance but who must enlist volunteers and collect signatures long before the general population has begun to think about the election season. The process can take

---

[3] Pursuant to Local Rule of Civil Practice 10-3(d), this case is not attached to this application. Plaintiffs can provide relevant case files upon request.

several months and the early deadline makes it difficult. . . to generate enough enthusiasm in the voting public to enlist volunteers and collect the needed number of signatures." *Id.* (citing *Anderson* at 790.)

## 2. The Secretary Of State Has Discretion To Put Presidential And Vice Presidential Candidates Of Minor Political Parties On The Ballot Despite Technical Violations Of NRS 293.172 and 293.1715.

Nothing in NRS 293.1715 and NRS 293.172 prevents the Secretary of State from accepting additional signatures past the minor political party petition deadline set forth therein, and thus place the names of Dr. Jill Stein and her vice presidential candidate on the general election ballot, assuming the required number of signatures provided by the Nevada Green Party get verified. The statute neither prohibits the Secretary of State from exercising such discretion nor logically could it. There has been no actual or theoretical prejudice shown to any party whatsoever by the late commission of the ministerial act of filing these petitions. Indeed, because the Nevada Green Party was required to submit a copy of the petition with the Secretary of State before the petition may be circulated for signatures under NRS 293.1715(4), the Secretary of State knew well in advance of June 3, 2016 that the party would be submitting this petition. Since the relevant statutes are silent on the issue, there is no reason the Secretary of State cannot exercise her discretion to accept the Nevada Green Party's additional signatures past the June 3, 2016 deadline.

## 3. In The Alternative, NRS 293.172 And 293.1715 Are Unconstitutional If Read To Give The Secretary Of State No Discretion To Place The Nevada Green Party Candidate's Names On The November General

**Election Ballot**

If, despite the absence of any language supporting such a holding, this Court would construe the statute to prohibit the Secretary of State from putting Dr. Stein and her vice presidential candidate on the November ballot, it is unconstitutional for several reasons.

### a. Under *Anderson*, NRS 293.172 And 293.1715 Would Be Unconstitutional If Read to Allow No Discretion

As the United States Supreme Court has held, ballot regulation cannot constitutionally impose an unwarranted burden on the ability of third parties and independents from securing a position on the general election ballot. *Anderson*, 460 U.S. 780. *Anderson* and a long line of cases citing the decision confirm that a court assessing the legitimacy of a ballot regulation:

> "must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It must then identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it must also consider the extent to which those interests make it necessary to burden the plaintiff's rights." *Anderson* at 789.

Thus, when First and Fourteenth Amendment rights are subjected to severe restrictions, the "regulation [at issue] must be 'narrowly drawn to advance a state interest of compelling importance.'" *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (quoting *Norman v. Reed*, 502 U.S. 279, 289).

Restrictions on access to the ballot burden two distinct and fundamental rights: "The right of individuals to associate for the advancement of political beliefs" and "the

right of qualified voters, regardless of their political persuasion, to cast their votes effectively." *Williams v. Rhodes*, 393 U.S. 23, 30 (1968). Access restrictions also implicate voting rights because absent referendums, "voters can assert their preferences only through candidates or parties or both." *Lubin v. Panish*, 415 U.S. 709, 716 (1974).

"There can no longer be any doubt that freedom to associate with others for the common advancement of political beliefs and ideas is a form of orderly group activity protected by the First and Fourteenth Amendments. The right to associate with the political party of one's choice is an integral part of this basic constitutional freedom." *Kusper v. Pontikes*, 414 U.S. 51, 56-57 (1973). "Any interference with the freedom of a party is simultaneously an interference with the freedom of its adherents." *Democratic Party of U.S. v. Wisconsin ex rel. La Follette*, 450 U.S. 107, 122 (1981).

By limiting the choices available to voters, the state impairs the voters' ability to express their political preferences. As the Supreme Court previously held in another case concerning a state law preventing a third party's access to the ballot, "an election campaign is a means of disseminating ideas as well as attaining political office." *Illinois Bd. of Elections vs. Socialist Workers Party*, 440 U.S. 173, 186. When such vital individual rights are at stake, a state must establish that a restriction is necessary to serve a compelling interest. *See Nader v. Brewer*, 531 F.3d 1028 (9th Cir. 2008). "[E]ven when pursuing a legitimate interest, a state may not choose means that unnecessarily restrict constitutionally protected liberty." *Kusper v. Pontikes*, 414 U.S. 51, 59 (1973).

In evaluating any purported state interests, the Court should bear in mind that:

"[I]n the context of a Presidential election, state-imposed restrictions

implicate a uniquely important national interest. For the President and the Vice President of the United States are the only elected officials who represent all the voters in the Nation. … Thus in a Presidential election a state's enforcement of more stringent ballot access requirements, including filing deadlines, has an impact beyond its own borders. Similarly, the State has a less important interest in regulating Presidential elections than statewide or local elections because the outcome of the former will be largely determined by voters beyond the State's boundaries. … *Cousins v. Wigoda*, 419 U.S. 477, 490 (1975). The Ohio filing deadline challenged in this case … places a significant state-imposed restriction on a nationwide electoral process." *Anderson* at 795.

Here, the facts exemplify the extreme burdens placed on fundamental rights by regulations that restrict access to the ballot. The June 3, 2016 deadline has imposed a considerable burden on third parties, including the Nevada Green Party. The deadline requires the Green Party to organize, gather, and file its petition with 5,431 verified signatures over 5 months before the general election in November, and nearly two months before the party even holds its national convention and nominates its candidates. Borghese Decl.  ¶ 3. In addition, the effect of not meeting the deadline is to preclude entirely a presidential candidate from appearing on the Nevada ballot.

Moreover, there is no discernable state interest present in forcing minor political parties to submit their petitions 159 days before a general election. There is simply no reason beyond an arbitrary statute as to why the presidential candidates' nomination petitions must be filed so early. In fact, as late as 2002, the same deadline at issue was set for July 5, 2002. Exh.1. Now, for no apparent reason, the deadline was moved back to early June again, falling on June 3, 2016. Clearly, any state interests supporting such an early deadline are no more than ephemeral compared to the serious intrusions on the Green Party's constitutional rights.

**B.  Plaintiffs Have No Remedy Available At Law**

There are no remedies at law available to the Plaintiffs in this case, because 1) NRS 293.1715, NRS 293.172, and the surrounding statutes list no remedies at law for not meeting arbitrary deadlines; 2) Defendant's representatives offered Plaintiffs no opportunity for redress, instead telling Kim Borghese of the Nevada Green Party that there could be no late filings; and 3) Plaintiffs do not seek monetary damages. Borghese Decl. ¶ 7. Thus, there is nothing other than the relief requested herein that can make the Plaintiffs whole.

### C. Plaintiffs Will Be Irreparably Harmed If Denied Preliminary Relief

The third prong of the test is easily satisfied in this case, as already set forth in the section above relating to grounds for a temporary restraining order. Specifically, the challenged deadline enforced by Defendant, if allowed to remain in effect during this period, will cause significant harm to the Plaintiffs' First Amendment rights that cannot be adequately remedied afterwards. *Anderson* at 787 (recognizing harm to voters' First Amendment rights of association when they are unable to vote for the candidates they support).

If the Nevada Green Party is not allowed to submit its presidential electors' nomination papers in time for the electors' and candidates' names to be printed on the November 8, 2016 general election ballots, it will effectively be handicapped because the names will not appear on the ballot. Borghese Decl. ¶ 10. Likewise, Nevada voters will not be able to vote for Dr. Stein and the vice presidential candidate for the Green Party. *Id.* These harms to Plaintiffs constitute irreparable harm sufficient to merit a preliminary injunction.

### D. The Balance of Hardships Tips in The Favor Of Plaintiffs and the Granting of Relief is in the Public Interest.

Without the protection of a Temporary Restraining Order or Preliminary Injunction, Plaintiffs will suffer a great hardship. They will lose the opportunity to exercise their precious First Amendment rights either by not having their name on the ballot or by not being permitted to vote for and support the candidates and parties of their choice. In this country where political freedom is cherished, such a loss is recognized as a more serious hardship than financial loss or inconvenience and, as discussed above, such a loss is an irreparable harm.

On the other hand, the only conceivable hardship that Defendant will suffer if the injunction is granted is being forced to work under more strict time constraints to verify the additional signatures submitted by the Nevada Green Party and place the Nevada Green Party's candidate, Dr. Jill Stein, and her vice-presidential candidate on the general election ballot in time. Considering that in 2002, the same deadline at issue was July 5, the harm to Defendant is nominal at best. The harm to Plaintiffs' constitutional rights is more burdensome and constitutes a greater hardship.

Furthermore, accepting the Green Party's signatures past the June 3, 2016 deadline to allow its presidential candidate to appear on the ballot only furthers the public interest in voters voting for the candidates of their choice, as well as political parties promoting the candidates of their choice. As the Third Circuit noted, "[i]n the absence of legitimate, countervailing concerns, the public interest clearly favors the protection of constitutional rights, including the voting and associational rights of

alternative political parties, their candidates, and their potential supporters." *Council of Alternative Pol. Parties v. Hooks*, 121 F.3d 876, 884 (3d Cir. 1997).

As a result of the above, an order to show cause why the preliminary injunction order filed concurrently with this Application should not issue must be granted.

PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE
RE: PRELIMINARY INJUNCTION

## V. <u>CONCLUSION</u>

In the absence of the relief requested in this Application, the Nevada Green Party's exclusion from the ballot will not only cause its First and Fourteenth Amendment rights to be violated, but also those of its supporters, whose voices will be effectively silenced by their inability to vote for the candidate of their choosing. NRS 273.172 and 273.1715 fail any constitutional test in light of the lack of any state interest supporting its early cutoff for a purely ministerial act. There is no evident state interest in keeping the Green Party's and other minor political party's candidates off the ballot besides silencing the voices of third parties and voters who support them. Finally, the Secretary of State has discretion to allow the candidates and electors to be placed on the ballot given the lack of any specific remedy expressly stated in the statute. As a result, this Court should grant the concurrently filed temporary restraining order and order to show cause why a preliminary injunction should not be issued.

DATED:  August 16, 2016                              Respectfully submitted,

/s/ Tony Nasser
Tony Nasser, Esq.
Attorney for Plaintiffs

/s/ Mace Yampolsky
Mace Yampolsky, Esq.
Local Counsel for Plaintiffs

PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE
RE: PRELIMINARY INJUNCTION